**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

LUXOTTICA GROUP S.p.A., and COSTA DEL
MAR, INC.,

                Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Luxottica Group S.p.A. and Costa Del Mar, Inc. ("Plaintiffs") hereby sue

Defendants, the Individuals, Business Entities, and Unincorporated Associations Identified on

Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and

distributing goods bearing and using counterfeits and confusingly similar imitations of Plaintiffs'

respective trademarks within this district through various fully interactive, commercial Internet

websites operating under the domain names set forth on Schedule "A" hereto (the "Subject Domain

Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false

designation of origin, cybersquatting, common law unfair competition, and common law

trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a) and 1125(d), The All

Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least, the fully interactive commercial Internet websites accessible in Florida and operating under the Subject Domain Names. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff, Luxottica Group S.p.A. ("Luxottica"), is a corporation organized under the laws of Italy with its principal place of business in Milan, Italy, and an office in the United States located at 4000 Luxottica Place, Mason, Ohio 45040-8114. Luxottica is, and for years has been, a global leader in the design, manufacture and distribution of fashion, sports and performance eyewear. Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods and sports eyewear products under multiple world-famous common law and federally registered

trademarks, including but not limited to the RAY-BAN® family of marks, as discussed in Paragraph 16 below.

5.      Plaintiff, Costa Del Mar, Inc. ("Costa") is a corporation organized under the laws of the State of Florida with its principal place of business in Daytona Beach, Florida and an office located at 2361 Mason Avenue, Suite 100, Daytona Beach, Florida, 32117-5166. Costa is an indirect, wholly-owned subsidiary of FGX International, Inc.[1]  Costa is, and for years has been, a leader in the design, manufacture, and distribution of outdoor lifestyle sunglasses. Costa is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality sports performance lifestyle goods under multiple world-famous common law and federally registered trademarks, as discussed in Paragraph 25 below.

6.      Plaintiffs' goods are sold through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the offer for sale and sale of counterfeit and infringing versions of Plaintiffs' respective branded products, are directly and unfairly competing with each Plaintiffs' economic interests in the United States, including the State of Florida, and causing each Plaintiff irreparable harm and damage within this jurisdiction.

7.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores and websites. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with

---

[1] The Plaintiffs are related ultimate subsidiaries of EssilorLuxottica S.A., a French corporation.

Plaintiffs' respective famous names and trademarks, as well as the destruction of the legitimate market sector in which they operate.

8. To combat the indivisible harm caused by the combined actions of Defendants, Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiffs, to expend significant resources across a wide spectrum of efforts in order to protect both consumers and themselves from confusion and the erosion of the goodwill embodied in Plaintiffs' respective brands.

## THE DEFENDANTS

9. Defendants are individuals, business entities of unknown makeup, or unincorporated associations, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the operation of interactive commercial Internet websites under the Subject Domain Names.

10. Defendants use aliases in connection with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

11. Defendants are the past and present controlling force behind the sale of products bearing counterfeits and infringements of Plaintiffs' individual trademarks as described herein.

12.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods, each using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through commercial Internet websites using, at least, the Subject Domain Names, as well as additional domain names or websites not yet known to Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of one or more of Plaintiffs' goods into the State.

13.     Defendants have registered, established or purchased, and maintained their Subject Domain Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their domain registrars during the registration or maintenance process related to their respective Subject Domain Name. Many Defendants have registered and/or maintained their Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

14.     Defendants will likely continue to register or acquire new domain names for the purpose of selling and offering for sale goods using counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

15.     Defendants' Subject Domain Names, associated payment accounts, and any other domain names used in connection with the sale of counterfeit and infringing goods using one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and/or trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain

Names, thereby increasing the value of the Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Luxottica's Business and Trademark Rights

16.     Luxottica is the owner of all rights in and to the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "RAY-BAN Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| WAYFARER | 0,595,513 | September 21, 1954 | IC 009. sunglasses. |
| Ray-Ban | 0,650,499 | August 20, 1957 | IC 009. Sunglasses, shooting glasses, and ophthalmic lenses. |
| Ray-Ban | 1,093,658 | June 20, 1978 | IC 009. Ophthalmic products and accessories; namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles. |
| LUXOTTICA | 1,254,409 | October 18, 1983 | IC 009. Eyeglasses, sunglasses, templates and eyeglass frames. |
| Ray-Ban | 1,320,460 | February 19, 1985 | IC 009. Sunglasses and carrying cases therefor. |
| LUXOTTICA ☆☆ | 1,511,615 | November 8, 1988 | IC 009. Eyeglasses, sunglasses, temples and eyeglass frames. |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| *Ray-Ban* | 1,726,955 | October 27, 1992 | IC 018. Bags; namely, tote, duffle and all purpose sports bags.<br><br>IC 021. Cloths for cleaning ophthalmic products.<br><br>IC 025. Clothing and headgear, namely, hats. |
| *RB* | 2,971,023 | July 19, 2005 | IC 009. Sunglasses, eyeglasses, eyeglass lenses. |
| *Ray-Ban* | 3,522,603 | October 21, 2008 | IC 009. sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses. |

The RAY-BAN Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the RAY-BAN Marks are attached hereto as Composite Exhibit "1."

17.     The RAY-BAN Marks have been used in interstate commerce to identify and distinguish Luxottica's high-quality goods for an extended period of time.

18.     The RAY-BAN Marks have been used in commerce by Luxottica long prior in time to Defendants' use of copies of those Marks. The RAY-BAN Marks have never been assigned or licensed to any of the Defendants in this matter.

19.     The RAY-BAN Marks are symbols of Luxottica's quality, reputation, and goodwill and have never been abandoned. Luxottica has carefully monitored and policed the use of the RAY-BAN Marks.

20.     The RAY-BAN Marks are well known and famous and have been for many years. Luxottica expends substantial resources developing, advertising, and otherwise promoting the

7

RAY-BAN Marks. The RAY-BAN Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.     Further, Luxottica extensively uses, advertises, and promotes the RAY-BAN Marks in the United States in association with the sale of high-quality goods. Luxottica has expended substantial resources promoting the RAY-BAN Marks and products bearing the RAY-BAN Marks on the Internet and via its official website, www.ray-ban.com. In recent years, annual sales of products bearing the RAY-BAN Marks have totaled in the hundreds of millions of dollars within the United States.

22.     As a result of Luxottica's efforts, members of the consuming public readily identify merchandise bearing or sold using the RAY-BAN Marks as being high quality goods sponsored and approved by Luxottica.

23.     Accordingly, the RAY-BAN Marks have achieved secondary meaning among consumers as identifiers of Luxottica's high-quality goods.

24.     Genuine goods bearing the RAY-BAN Marks are widely legitimately advertised and promoted by Luxottica, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, is important to Luxottica's overall marketing and consumer education efforts. Thus, Luxottica expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow Luxottica and its authorized retailers to educate consumers fairly and legitimately about the value associated with the RAY-BAN Marks and the goods sold thereunder. Similarly, Defendants' individual websites are indexed on search engines and compete directly with Luxottica for space and consumer attention in the search results.

**Costa's Business and Trademark Rights**

25.     Costa is the owner of all rights in and to the following trademarks which are valid

and registered on the Principal Register of the United States Patent and Trademark Office

(collectively, the "COSTA Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
|  | 3,273,228 | August 7, 2007 | IC 009. Sunglasses, sunglass frames, sunglass lenses. |
|  | 4,114,951 | March 20, 2012 | IC 009. Sports eyewear and sunglasses. |

The COSTA Marks are used in connection with the manufacture and distribution of high-quality

goods in the categories identified above. True and correct copies of the Certificates of Registration

for the COSTA Marks are attached hereto as Composite Exhibit "2."

26.     The COSTA Marks have been used in interstate commerce to identify and

distinguish Costa's high-quality goods for an extended period of time.

27.     The COSTA Marks have been used in commerce by Costa long prior in time to

Defendants' use of copies of those Marks. The COSTA Marks have never been assigned or

licensed to any of the Defendants in this matter.

28.     The COSTA Marks are symbols of Costa's quality, reputation, and goodwill and

have never been abandoned. Costa has carefully monitored and policed the use of the COSTA

Marks.

29.     The COSTA Marks are well known and famous and have been for many years.

Costa expends substantial resources in developing, advertising, and otherwise promoting the

9

COSTA Marks. The COSTA Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

30.     Further, Costa extensively uses, advertises, and promotes the COSTA Marks in the United States in association with the sale of high-quality goods. Costa has expended enormous resources promoting the COSTA Marks and products bearing the COSTA Marks on the Internet and via its official website, www.costadelmar.com. In recent years, annual sales of products bearing the COSTA Marks have totaled in the millions of dollars within the United States.

31.     As a result of Costa's efforts, members of the consuming public readily identify merchandise bearing or sold under the COSTA Marks as being high quality merchandise sponsored and approved by Costa.

32.     Accordingly, the COSTA Marks have achieved secondary meaning among consumers as identifiers of Costa's high-quality goods.

33.     Genuine goods bearing the COSTA Marks are widely legitimately advertised and promoted by Costa, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, is important to Costa's overall marketing and consumer education efforts. Thus, Costa expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow Costa and its authorized retailers to educate consumers fairly and legitimately about the value associated with the COSTA Marks and the goods sold thereunder. Similarly, Defendants' individual websites are indexed on search engines and compete directly with Costa for space and consumer attention in the search results.

**Defendants' Infringing Activities**

34.     Defendants are each promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce using counterfeit and confusingly similar imitations of one or more of the RAY-BAN Marks and/or the COSTA Marks (the "Counterfeit Goods") through at least the interactive, commercial Internet websites operating under the Subject Domain Names. Specifically, Defendants are using the RAY-BAN Marks and/or COSTA Marks (collectively "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' websites operating under the Subject Domain Names. Defendants are each using virtually identical copies of one or more of Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering goods using counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

35.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' respective, genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for Plaintiffs' genuine high-quality goods despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' websites are genuine goods originating from, associated with, and/or approved by Plaintiffs.

36.     Defendants advertise their websites, including their Counterfeit Goods offered for sale, to the consuming public via commercial websites operating under at least the Subject Domain

Names. In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

37.     As part of their overall unlawful scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of at least one of Plaintiffs' famous names or Plaintiffs' Marks to make websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

38.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities towards consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

39.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

40. Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

41. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

42. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective, genuine goods and Defendants' Counterfeit Goods, which there is not.

43. Moreover, upon information and belief, at least Defendant Numbers 1–2 have registered one or more of their respective Subject Domain Name using marks that are nearly identical and/or confusingly similar to at least one of Plaintiffs' Marks (the "Cybersquatted Subject Domain Names").

44. Defendant Numbers 1–2 do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks. Further, Plaintiffs' Marks have never been assigned or licensed to be used on any of the websites, including the websites operating under the Cybersquatted Subject Domain Names.

45. Defendant Numbers 1–2 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names or have

intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

46.     Defendant Numbers 1–2 have never used the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

47.     Defendant Numbers 1–2 have not made any bona fide non-commercial or fair use of Plaintiffs' Marks on a website accessible under the Cybersquatted Subject Domain Names.

48.     Defendant Numbers 1–2 have intentionally incorporated at least one of Plaintiffs' Marks in their respective Cybersquatted Subject Domain Name to divert consumers looking for one of Plaintiffs' Internet websites to their own respective Internet website for commercial gain.

49.     Given the visibility of Defendants' various websites and the similarity of their actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate as a result of Defendants' concurrent actions.

50.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

51.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing, and unfairly competitive activities connected to their Subject Domain Names and any other alias domain names or websites being used and/or controlled by them.

52.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

53.    Plaintiffs have no adequate remedy at law.

54.    Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs' Marks.  If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

55.    The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

56.    Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 55 above.

57.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

58.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using and/or bearing counterfeits and/or infringements of one or more of Plaintiffs' Marks.  Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of Plaintiffs' Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiffs' branded goods.

59.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

60.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

61.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

62.     Plaintiffs have no adequate remedy at law. Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

63.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 55 above.

64.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the Internet.

65.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly,

Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

66.     Defendants have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols and trade dress which falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

67.     Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

68.     Additionally, many Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

69.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

70.     Plaintiffs have no adequate remedy at law and have sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and each Plaintiff

will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT III –CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d)) (Against Defendant Numbers 1–2 only)

71.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 55 above.

72.     At all times relevant hereto, Plaintiffs have been and still are the owners of the rights, title, and interest in and to their respective Marks.

73.     Defendant Numbers 1–2 have acted with the bad faith intent to profit from at least one of Plaintiffs' Marks and the goodwill associated with Plaintiffs' Marks by registering and using their respective Cybersquatted Subject Domain Name.

74.     Plaintiffs' Marks were distinctive and famous at the time Defendant Numbers 1–2 registered the Cybersquatted Subject Domain Names.

75.     Defendant Numbers 1–2 have no intellectual property rights in or to Plaintiffs' Marks.

76.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks.

77.     Defendant Numbers 1–2's conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in the Marks. At a minimum, the conduct of these Defendants constitutes reckless disregard for and willful blindness to Plaintiffs' rights.

78.     Defendant Numbers 1–2's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

79.     Plaintiffs have no adequate remedy at law.

80.     Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to the above-described activities of Defendant Numbers 1–2 if these Defendants are not preliminarily and permanently enjoined

## COUNT IV - COMMON LAW UNFAIR COMPETITION.

81.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 55 above.

82.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using or bearing marks which are virtually identical to one or more of Plaintiffs' Marks, in violation of Florida's common law of unfair competition.

83.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing infringing and counterfeit versions of Plaintiffs' branded goods. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

84.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among the consumers as to the origin and quality of  Defendants' e-commerce stores as a whole and all products sold therein by their use of Plaintiffs' Marks.

85.     Plaintiffs have no adequate remedy at law. Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

86.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 55 above.

87.     Plaintiffs are the respective owners of all common law rights in and to their respective Plaintiffs' Marks.

88.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of their Counterfeit Goods using one or more of Plaintiffs' Marks.

89.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of Plaintiffs' Marks.

90.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among the consumers as to the origin and quality of Defendants' Counterfeit Goods bearing Plaintiffs' Marks.

91.     Plaintiffs have no adequate remedy at law. Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## PRAYER FOR RELIEF

92.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65

enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' name or trademarks and from otherwise unfairly competing with Plaintiffs.

   b.   Entry of temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in

connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of Plaintiffs' Marks.

        c.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domain names used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

        d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names, and any other domain names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks, to Plaintiffs' control so they may no longer be used for unlawful purposes.

        e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators, registrar and/or top level domain (TLD) Registry for the Subject Domain Names, who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendants' respective Subject Domain Name.

f.      Entry of an order requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their Subject Domain Name(s), and any other domains names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

g.      Entry of an order requiring Defendants, their agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s), and any other domains names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of Plaintiffs' Marks.

i.      Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15

U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

j.      Entry of an order requiring Defendant Numbers 1–2 to account to and pay Plaintiffs for all profits and damages resulting from those Defendants' cybersquatting activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. § 1117, or that Plaintiffs be awarded statutory damages from Defendant Numbers 1–2 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

k.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

l.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Subject Domain Names, or other alias domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

m.      Entry of an award of pre-judgment interest on the judgment amount.

        n.      Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        o.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: January 18, 2022.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**