IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 22-60121-CIV-MOORE/SNOW

LUXOTTICA GROUP S.p.A. and COSTA
DEL MAR, INC.,

    Plaintiffs,

v.

THE INDIVIDUALS, BUSINESS
ENTITIES, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon the Motion for Preliminary Injunction (ECF No. 6) filed by Plaintiffs', Luxottica Group S.p.A. and Costa Del Mar, Inc. (collectively "Plaintiffs"), which was referred to United States Magistrate Judge Lurana S. Snow (ECF No. 14) for a Report and Recommendation. The undersigned has carefully considered the Motion, the record in the case, and the applicable law, and is otherwise fully advised. By the instant Motion, Plaintiffs move for an entry of a preliminary injunction against Defendants,[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and 1125(d).

The undersigned held a hearing on May 23, 2022, which was attended by counsel for Plaintiffs only. During the hearing, Plaintiffs directed the undersigned to evidence supporting the Motion for Preliminary Injunction. Defendants have not formally responded to the Motion for Preliminary Injunction, nor have they made any appearance or filing in this case, either individually or through counsel.

---

[1] Defendants are the individuals, business entities, or unincorporated associations identified on Schedule "A" hereto.

Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court finds that the Motion for Preliminary Injunction should be granted.

I. BACKGROUND[2]

Luxottica Group S.p.A. is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "RAY-BAN Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| WAYFARER | 0,595,513 | September 21, 1954 | IC 009. Sunglasses. |
| Ray-Ban | 0,650,499 | August 20, 1957 | IC 009. Sunglasses, shooting glasses, and ophthalmic lenses. |
| Ray-Ban | 1,093,658 | June 20, 1978 | IC 009. Ophthalmic products and accessories; namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles. |
| LUXOTTICA | 1,254,409 | October 18, 1983 | IC 009. Eyeglasses, sunglasses, templates and eyeglass frames. |
| Ray-Ban (circular logo) | 1,320,460 | February 19, 1985 | IC 009. Sunglasses and carrying cases therefor. |
| LUXOTTICA ☆☆ | 1,511,615 | November 8, 1988 | IC 009. Eyeglasses, sunglasses, temples and eyeglass frames. |

---

[2] The facts herein are taken from Plaintiffs' Complaint (ECF No. 1) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 6).

2

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| Ray-Ban | 1,726,955 | October 27, 1992 | IC 018. Bags; namely, tote, duffle and all purpose sports bags.<br><br>IC 021. Cloths for cleaning ophthalmic products.<br><br>IC 025. Clothing and headgear, namely, hats. |
| RB | 2,971,023 | July 19, 2005 | IC 009. Sunglasses, eyeglasses, eyeglass lenses. |
| Ray-Ban | 3,522,603 | October 21, 2008 | IC 009. sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses. |

*See* Declaration of Jason Groppe in Support of Plaintiffs' Motion for Preliminary Injunction ("Groppe Decl.") at ¶¶ 4-5. The RAY-BAN Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See id.*

Costa Del Mar, Inc. is the owner of all rights in and to the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "COSTA Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| C logo | 3,273,228 | August 7, 2007 | IC 009. Sunglasses, sunglass frames, sunglass lenses. |
| (fish design) | 4,114,951 | March 20, 2012 | IC 009. Sports eyewear and sunglasses. |

3

*See* Groppe Decl. at ¶¶ 10-11. The COSTA Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See id.*

Defendants, by operating commercial Internet websites under their domain names (the "Subject Domain Names"), have advertised, promoted, offered for sale, and/or sold goods bearing what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the RAY BAN Marks and COSTA Marks (collectively "Plaintiffs' Marks"). *See* Groppe Decl. at ¶¶ 16, 19-20, 23.

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed at least one or more of Plaintiffs' Marks. *See* Groppe Decl. at ¶¶ 16, 19-20, 23. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks. *See* Groppe Decl. at ¶¶ 5, 11, 16, 19-20, 23.

Plaintiffs learned of Defendants' potential sale of counterfeit versions of Plaintiffs' goods. Plaintiffs allege that Defendants sell these counterfeit goods through the Subject Domain Names. Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of goods bearing counterfeits of Plaintiffs' respective trademarks by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants in connection with the sale of such counterfeit branded products

4

through the Subject Domain Names. *See* Groppe Decl. at ¶ 17; Declaration of T. Raquel Wiborg-Rodriguez in Support of Plaintiffs' Motion for Preliminary Injunction ("Wiborg-Rodriguez Decl.") at ¶ 2; Declaration of Kathleen Burns in Support of Plaintiffs' Motion for Preliminary Injunction ("Burns Decl.") at ¶ 3; Declaration of Kathleen Burns in Support of Plaintiffs' Notice of Identification of Additional Alias and Additional PayPal Account Used by Defendant Number 4 ("Burns Suppl. Decl.") at ¶ 3.

Invisible accessed Defendants' fully interactive, commercial Internet websites operating under their respective Subject Domain Name, placed orders from each Defendant for the purchase of a product – all bearing counterfeits of, at least, one of Plaintiffs' Marks at issue in this action – and requested each product be shipped to one of its addresses in the Southern District of Florida. Each order was processed entirely online, and following the submission of its orders, Invisible received information for finalizing payment[3] for the products ordered via Defendants' respective PayPal, Inc. ("PayPal") accounts as identified on Schedule "A".[4] *See* Burns Decl. at ¶ 4 and Comp. Ex. 1 thereto; Burns Suppl. Decl. at ¶ 5 and Comp.

---

[3] Following the submission of certain orders from Defendants' Subject Domain Names, Invisible received the identical PayPal payee and corresponding Merchant Identification Number for finalizing payment, as noted on Schedule "A." As such, Invisible was instructed not to transmit the funds to finalize the sale for the order from some of the Subject Domain Names so as to avoid adding money to Defendants' coffers. *See* Wiborg-Rodriguez Decl. ¶ 2 n.1; Burns Decl. ¶ 4 n.2.

[4] Additional contact e-mail addresses for Defendants are also identified on Schedule "A" hereto.

Ex. 1 thereto. At the conclusion of the process, the detailed web page captures[5] and images reflecting the Plaintiffs' branded products ordered via Defendants' Subject Domain Names were sent to Plaintiffs' representative for inspection. *See* Groppe Decl. at ¶ 18; Wiborg-Rodriguez Decl. at ¶ 2.

Plaintiffs' representative, who is able to identify the distinctions between genuine Plaintiffs' branded merchandise and counterfeit copies of the same, conducted a review and visually inspected the websites operating under Defendants' Subject Domain Names, or the detailed web page captures thereof reflecting Plaintiffs' branded products ordered by Invisible, and determined the products were not genuine versions of Plaintiffs' goods. *See* Groppe Decl. ¶¶ at 19-20.

On January 18, 2022, Plaintiffs filed their Complaint (ECF No. 1) against Defendants for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant. On January 19, 2022, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 6). On May 13, 2022, the Honorable K. Michael Moore entered a Sealed Order Granting Plaintiffs' *Ex Parte* Application for Temporary Restraining Order and Order Restraining Transfer of Assets (the "TRO") (ECF No. 14) and temporarily restrained Defendants from infringing Plaintiffs' Trademarks at issue, and referring this matter pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the

---

[5] The web page captured and downloaded by Plaintiffs' counsel's office, Stephen M. Gaffigan, P.A., identifying the customer service e-mail address for a certain Defendant is included in Comp. Ex. 1 to the Burns Decl.

Southern District of Florida, to the undersigned to take all necessary and proper action as required by law with respect to Plaintiffs' request for a preliminary injunction. (ECF No. 14). Pursuant to the Court's TRO, Plaintiffs properly served Defendants with a copy of the Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, the Court's TRO, the Sealed Order setting hearing on Plaintiffs' Motion for Preliminary Injunction, and all other pleadings and orders issued in this action, thereby providing notice and copies of all documents on file in this action. (ECF Nos. 22, 23)

## II.  LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the inunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest in order to obtain injunctive relief. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted).

## III.  ANALYSIS

Plaintiffs have produced evidence that demonstrates that there is probable cause that consumers are likely to be confused by Defendants' advertisement, sale, offers for sale, and/or distribution of goods bearing and/or using counterfeits, infringements, reproductions, or colorable imitations of one or more of Plaintiffs' respective registered trademarks, and that the products Defendants are selling and promoting are copies of Plaintiffs' products that bear copies of Plaintiffs'

7

Marks. Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted for the following reasons: (a) Defendants own or control commercial Internet websites operating under their Subject Domain Names which advertise, promote, offer for sale, or sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; (b) there is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products; (c) the balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and goodwill as manufacturers and distributors of quality products, if such relief is not issued; and (d) the public interest favors issuance of the preliminary injunction to protect Plaintiffs' respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of Plaintiffs.

Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir.

8

1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). In light of the inherently deceptive nature of the counterfeiting business, and Defendants' violations of the federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   CONCLUSION

Accordingly, it is RECOMMENDED that Plaintiffs' Motion for Preliminary Injunction (ECF No. 6) be GRANTED and a Preliminary Injunction be entered as follows:

1.   Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined, until further Order of this Court:

> a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiffs' Trademarks or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

      b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using Plaintiffs' Trademarks or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiffs' Trademarks or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

    2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further order of this Court, the use of Plaintiffs' Trademarks or any confusingly similar trademarks, on or in connection with all Internet website businesses owned and operated or controlled by them including the Internet websites operating under the Subject Domain Names;

    3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Trademarks or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet website businesses registered by,

owned, or operated by any Defendant, including the Internet websites operating under their Subject Domain Names;

4. Each Defendant shall not transfer ownership of the Internet based websites operating under their Subject Domain Names during the pendency of this action, or until further Order of the Court;

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet based website businesses under their Subject Domain Names, and shall take all steps necessary to retrieve computer files relating to the use of the Internet based website businesses operating under their Subject Domain Names that may have been deleted before the entry of this Order;

6. Upon Plaintiffs' request, the privacy protection service for the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose, to the extent not already done, to Plaintiffs the true identities and contact information for those registrants;

7. The domain name registrars for the Subject Domain Names shall immediately assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of

receipt of this Order, the top-level domain (TLD) registries for the Subject Domain Names or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiffs have been or will be dismissed from this action or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/lkss79/index.html, whereon copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on

lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants;

8. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts associated with the Internet websites operating under the Subject Domain Names, the PayPal payees, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

9. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds

transmitted into the financial account(s) and sub-account(s) that have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

10. This Order shall apply to the Subject Domain Names, associated websites, and any other domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Trademarks at issue in this action and/or unfairly competing with Plaintiffs;

11. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

12. As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

13. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

14. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to PayPal, and their related companies and affiliates shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with Defendants' respective Subject Domain Names;

15. This Order shall remain in effect during the pendency of this action, or until further date as set by the Court or stipulated by the parties.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 23rd day of May, 2022.

*[signature: Lurana S. Snow]*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record

## SCHEDULE A: DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, AND FINANCIAL ACCOUNT INFORMATION

| Def. # | Defendant / Subject Domain Name | Financial Account Information: PayPal Account / Payee | PayPal Merchant ID | Additional Email |
|---|---|---|---|---|
| 1 | costa.sunglasseshutnow.shop | Yue Tao | U8J7CRNB2J6YU | |
| | | houyue66@hotmail.com | | |
| 1 | sunglasshutonw-costa.com | Yue Tao | U8J7CRNB2J6YU | |
| 1 | sunglasshutonw-costa.shop | Yue Tao | U8J7CRNB2J6YU | |
| 1 | sunglassehut-costa.com | Yue Tao | U8J7CRNB2J6YU | |
| | | Yi Tengcheng | R5H6KEM6TPYTA | |
| | | Shenghong | TM9HWH2WU7VJY | |
| 2 | sunglassehut-costa.shop | Sihengtong | NMGWC572XTGUU | |
| 3 | arehomelife.space | | CVWZGBZ73QSXE | boerderecornd5766@gmail.com |
| 4 | blanviya.com | | LCU9GXCKS673E | blanviya@126.com |
| | | xuming1245@outlook.com | | |
| | | Shuangpai County Paralyzed Yuelao Department Store | C3YRJLX88VTRU | blanviya@126.com |
| | | 0 | C3YRJLX88VTRU | blanviya@126.com |
| 4 | genisay.live | shitao2000@yeah.net | 6SNP9RWQGFP8U | blanviya@126.com |
| 4 | genisay.com | Xuming | C3YRJLX88VTRU | genisay@126.com |
| 5 | caponic.com | chenpeiyue1988@163.com | QA2MC8GCGRDUJ | caponic@yeah.net |
| | | zengdefang2002@126.com | ZNTKQ7B3DLR68 | caponic@yeah.net |
| 6 | flytopbest.shop | Grandpa Yao | P4JWMBDDYJSC4 | |
| 7 | konicr.com | luguangrang1972@163.com | 2HQ8RSYFUP3DC | konicr01@126.com |
| | | zhonggenpin1987@163.com | GHQ5JB7JLZY3G | konicr01@126.com |
| 7 | licwry.online | jiashaofeng1958@hotmail.com | HELDCF4FGSVWJ | konicr01@126.com |